UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DIANE M. GORALSKI;
BEVERLY VASSALLO,

   *Plaintiffs*,

v.

SHARED TECHNOLOGIES, INC.,

   *Defendant*.

Civil Action No. 09-2461 (KSH)

**OPINION**

**Katharine S. Hayden, U.S.D.J.**

  Before the Court is a motion to remand the above-entitled action to state court. Defendant Shared Technologies, Inc. ("STI") removed this employment dispute on diversity grounds, which plaintiffs now challenge. For the reasons that follow, the Court concludes that the case was correctly removed and diversity jurisdiction is proper. The motion is therefore denied.

**I.**

  Plaintiffs Diane Goralski and Beverly Vassallo—former employees of STI—commenced this action on April 10, 2009 in the Superior Court of New Jersey, Law Division, Bergen County. They allege, *inter alia*, sexual harassment, disability harassment, and wrongful discharge against STI under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1, *et seq.*, and the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. § 34:19-1, *et seq*. At all times relevant here, plaintiffs were full-time customer-care representatives employed

1

by STI.  Compl. ¶¶ 2-3.  Plaintiffs' asserted causes of action are based on allegations of their colleagues' frequent inappropriate touching, viewing of pornographic websites, and sexually suggestive language at the workplace.  Compl. ¶¶ 4-6.  They claim that STI is liable under the doctrine because its upper management knew of this alleged behavior of its employees and did nothing to prevent it.  Compl. ¶¶ 8-15.  As stated, STI timely removed the case on May 17, 2009 [D.E. # 1], and this remand motion followed on July 2, 2009 [D.E. # 5].  *See* 28 U.S.C. §§ 1441, 1447, 1332(a).

## II.

### A.

To provide a neutral forum for civil litigants, Congress granted federal district courts original jurisdiction in certain civil actions between citizens of different states.  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005); 28 U.S.C. § 1332.  "To ensure that diversity jurisdiction does not flood the federal courts with minor disputes," § 1332(a) requires the amount in controversy to exceed $75,000.  *Id.*  The removal statute, 28 U.S.C. § 1441(a), provides in relevant part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).  Defendants may remove an action to federal district court based on diversity of citizenship if there is complete diversity between all named plaintiffs and all named defendants, and where the requisite amount in controversy is met.  *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005).  The removal statutes should be narrowly construed, and federal jurisdiction strictly limited to those cases that fit the removal framework.  *La Chemise*

*Lacoste v. Alligator Co.*, 506 F.2d 339, 344 (3d Cir. 1974).  A plaintiff wishing to challenge federal subject matter jurisdiction in a removed case may move for remand at any time after the notice of removal is filed.  28 U.S.C. § 1447(c).

Generally, the allegations on the face of a complaint control the amount-in-controversy calculation, *Horton v. Liberty Mutual Ins. Co.*, 367 U.S. 348, 353 (1961), although a complaint's "[i]ndeterminancy of the amount to be recovered is . . . not sufficient to defeat diversity jurisdiction . . . ."  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995).  When complaints are "open-ended" and do not allege a specified amount, the Court should perform its "own independent appraisal of the value of the claim," but must reasonably examine the rights being litigated and not focus on "the low end of an open-ended claim."  *Angus v. Shiley, Inc.*, 989 F.2d 142, 145-46 (3d Cir. 1993).  New Jersey civil practice disallows an exact damages specification in a complaint, instead requiring that "the pleading shall demand damages generally without specifying the amount."  N.J. Ct. R. 4:5-2.  In determining the amount in controversy, then, this Court may "treat the removal petition as if it had been amended to include the relevant information contained in later-filed affidavits."  *Willingham v. Morgan*, 395 U.S. 402, 408 n.3 (1969); *see also Reiff v. Convergent Techs.*, No. 95-3575, 1995 U.S. Dist. LEXIS 15535, at *10-13 (D.N.J. Oct. 20, 1995) (Irenas, J.).

The removing party—here, STI—bears the burden of demonstrating that the case properly belongs in federal court.  *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007) (citing *Samuel-Bassett v. Kia Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004)).  "[I]f, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the [C]ourt is satisfied to a [legal] certainty that the

3

plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). This is known as the "legal certainty test."

Until recently, issues concerning the legal frameworks and burdens of proof to be applied in amount-in-controversy disputes had long provoked confusion among the district courts. Discussing the issue in *Samuel-Bassett*, *supra*, the Third Circuit examined two earlier Supreme Court cases: *Red Cab*, *supra*, and *McNutt v. General Motors Acceptance Corporation of Indiana*, 298 U.S. 178 (1936). In *McNutt*, the complaint and record lacked "findings [and] evidence" supporting the requisite amount in controversy, and only generally alleged that it had been met. *McNutt*, 298 U.S. at 181. The Supreme Court framed the issue as follows: "In the absence of any showing in the record to support that general allegation, the question is upon which party lay the burden of proof." *Id.* It then held that the party asserting federal jurisdiction must "justify his allegations by a preponderance of [the] evidence." *Id.* at 189. Two years later, in *Red Cab*, plaintiff reduced its request for damages below the jurisdictional minimum after defendant filed a notice of removal. The Supreme Court held that because the complaint's amended request for damages was not made in good faith, the legal certainty test would apply to determine whether or not plaintiff could indeed recover the jurisdictional minimum, satisfying the amount-in-controversy requirement. *Red Cab*, 303 U.S. at 288-89. *In Samuel-Bassett*, the Third Circuit reconciled these two holdings on the basis of whether or not "relevant [jurisdictional] facts are . . . in dispute or findings have [previously] been made [by] the District Court . . . ." 357 F.3d at 398. If such findings had been made, the legal certainty test would apply; if not, the preponderance of the evidence standard would apply to resolve such disputes.

4

*Id.* Under the facts presented there, the Third Circuit held that the legal certainty test applied. *Id.*

When this discussion caused further confusion, the Third Circuit again clarified the *Red Cab*/*McNutt* dichotomy in *Morgan v. Gay*, 471 F.3d 469 (3d Cir. 2006) and *Frederico*, *supra*. In *Morgan*, a putative class action, the Third Circuit held that where a complaint expressly limits damages to a sum certain below the jurisdictional threshold, the removing defendant must prove to a legal certainty that the amount in controversy actually concerns the statutory minimum amount. *Id.* at 474. Conversely, in *Frederico* (another putative class action), the complaint *did not* state an exact sum of damages, but instead claimed "damages and compensation to all class members from the Defendants, interest, punitive damages, costs of suit, treble damages and attorneys' fees . . . ." 507 F.3d at 197. Reconciling its holding with *Morgan*, the Third Circuit applied the legal certainty test against the plaintiff challenging federal jurisdiction. It held as follows, once and for all:

> The distinction between a case governed by *Morgan* and a case governed by *Red Cab* and *Samuel-Bassett* is crystal clear. *Morgan* applies where the complaint specifically avers that the amount sought is less than the jurisdictional minimum. There, a defendant seeking removal must prove to a legal certainty that plaintiff *can* recover the jurisdictional amount. By contrast, *Samuel-Bassett* applies where the plaintiff has not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum. There, the case must be remanded if it appears to a legal certainty that the plaintiff *cannot* recover the jurisdictional amount.

*Id.* at 196-97 (emphasis in original).[1]

---

[1] The Court leaves for another day the practical implications of this standard, not discussed in *Frederico,* on the "settled [principle] . . . that the party *asserting* federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." *Frederico*, 507 F.3d at 193 (emphasis added).

5

In a thorough analysis in *Raspa v. Home Depot*, 533 F. Supp. 2d 514 (D.N.J. 2007), Judge Cavanaugh discussed this directive, and applied the *Red Cab/Samuel-Bassett* legal certainty test against plaintiffs, who had moved to remand the removed case back to state court. 533 F. Supp. 2d 514, 516-22.  In *Raspa*, plaintiffs did not demand a sum certain in their complaint asserting various tort claims against The Home Depot after being attacked by an animal in one of its stores.  *Id.* at 515.  Pursuant to *Frederico*, Judge Cavanaugh concluded that "the case falls under the framework established by *Samuel-Bassett*."  *Id.* at 522.

B.

The Court first addresses whether complete diversity of citizenship exists here.  Goralski and Vassallo are citizens of New Jersey and New York, respectively.  Compl. (prefatory statement).  STI is incorporated in Delaware and its corporate headquarters are located in Texas. Def.'s Opp. Br. 1-2; Declaration of Eileen Quilici ("Quilici Decl.") ¶ 4.  It operates facilities in seventeen states, with three or four located in Texas and only one in New Jersey (which is a call center).  Dubler Decl., Ex. H; Quilici Decl. ¶¶ 4, 10.  The company employs 166 people in Texas and 142 in New Jersey, most of whom are call-center employees.  Quilici Decl. ¶ 12. Additionally, 15 of the 19 top executives (including the chief executive officer, the chief financial officer, the chief information officer, and the chief technology officer) are located in Texas, while only one works out of the New Jersey facility.  Dubler Decl., Ex. G; Quilici Decl. ¶ 5.  Finally, "STI's accounts payable, accounts receivable, customer billing, expense reports, payroll, and other finance functions for the entire company all take place at [its] corporate headquarters in Texas."  Quilici Decl. ¶ 8.  For these reasons, the Court agrees with STI that it is

a citizen of neither New York nor New Jersey for jurisdictional purposes; rather, it is a corporate citizen of Delaware and Texas.  28 U.S.C. § 1332(c) ("[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."); *see also Kelly v. United States Steel Corp.*, 284 F.2d 850, 851-55 (3d Cir. 1960) (requiring courts to ascertain "the headquarters of day-to-day corporate activity and management" when determining where a corporation has its principal place of business under § 1332(c)); *Mennen Co. v. Atlantic Mut. Ins. Co.*, 147 F.3d 287, 291 (3d Cir. 1998) (describing the *Kelly* test as "the 'center of corporate activities' test").  Therefore, complete diversity of citizenship is present.

Plaintiffs focus their remand motion on the amount-in-controversy threshold, arguing that because the complaint does not explicitly claim $75,000 in potential damages, remand is proper. STI argues, on the other hand, that because it cannot be shown to a legal certainty that plaintiffs will recover less than $75,000, jurisdiction in this Court—and therefore, removal from state court—is proper.  STI's position is correct.  This Court finds the jurisdictional facts in *Raspa* indistinguishable from those present here.  Because the complaint in this case does not expressly limit its damages claim to less than the jurisdictional amount, this case falls under the *Red Cab/Samuel-Bassett* rubric.  *See Raspa*, 533 F. Supp. 2d at 522; *Frederico*, 507 F.3d at 193. That is, remand is proper if and only if it is clear to a legal certainty that plaintiffs cannot recover more than $75,000.

For each of the seven counts alleged in the complaint, plaintiffs seek unspecified "actual and punitive damages, together with attorney's fees, costs of suit, litigation expenses[,] and lawful interest."  Compl. at 4, 7-10.  But the communications between the parties and their

7

attorneys plainly establish that Goralski and Vassallo seek more than $75,000. In a cover letter to STI's Chief Executive Officer and Vice President of Human Resources accompanying the initial pleading, plaintiffs' attorney stated the following:

> You should read all of these documents and then provide copies to your company's lawyer. After you and your lawyer have had a chance to review this matter, you ought to conclude that there is a serious probability that you will be hit with a large judgment in the hundreds of thousands of dollars. If you litigate it fully, you will incur hourly legal fees adding up to several additional hundreds of thousands of dollars for your own attorneys—and you can also be ordered to pay legal fees to me, as an add-on after a successful verdict.
>
> In the enclosed Law Journal article of February 26, 2007, you can read about another sexual harassment case of mine, which produced a verdict of $335,000—right here in Bergen County in February 2007. Attorney's fees, interest and litigation costs were added, bringing the total verdict to $455,000, entered in June 2007, plus the defendants had spent well over $300,000 for their own legal fees. Their total expenditures exceeded $700,000—because they stubbornly insisted they were right, had done nothing wrong and probably listened to pie-in-the-sky, "we-can-win-this-case" advice from their lawyers (who made out like bandits in the case, to the defendants' detriment). Had they settled the case early, they probably could have settled it for $300,000—saving them $400,000 off the $700,000+ they ultimately spent.
>
> Now, you can elect to do one of two things: (1) Be outraged that your company is being sued and fight this case all the way, litigate it to the max, spend several hundred thousand dollars in legal fees and then watch in dismay as you get hit with a verdict and judgment for several hundred thousand more dollars. (2) Or—you can do something sensible: Try to mediate a settlement <u>before</u> you incur hundreds of thousands of dollars in legal fees.
>
> With that in mind, if you and your lawyer are interested in mediating this case, instead of engaging in fruitless, extremely costly, litigated defense, then we are open to doing that. Otherwise, we are more than ready, willing and able to litigate this case all the way to a successful conclusion. . . .

> Please advise. You have 35 days to respond to these papers under NJ law. After that, I will obtain a default judgment against your company.

Dubler Decl., Ex. B (underline in original).

After considering this letter, defense counsel proposed a stipulation that would limit the claimed damages to $75,000 per plaintiff. Dubler Decl., Ex. D. The same day, plaintiffs' counsel responded as follows:

> I will certainly not stipulate that the damages are less than $75,000. Why should I do that? As I stated in my letter-brief accompanying my motion to remand, it is impossible for you, me, the court or anyone else to know or forecast what the damages are when almost all of the damages are the unliquidated kind: emotional distress, mental anguish, possible punitives, etc. We will not know what the damages are until we try this case to completion. I look forward to doing that.

Dubler Decl., Ex. E.[2]

Plaintiffs' complaint, informed by counsel's communications with STI, demonstrates that more than the statutory threshold is in play. At the very least, if—as plaintiffs' attorney apparently believes—"it is impossible for . . . anyone else to know or forecast what the damages are," Dubler Decl., Ex. E, *a fortiori* it is not *legally certain* that the amount in controversy concerns less than $75,000. In any event, based on plaintiffs' counsel's claimed jury award in a recent sexual harassment case, plaintiffs evidently believe that there is a "serious probability"

---

[2] In a follow-up e-mail further demonstrating a potential recovery above the statutory threshold, plaintiffs' counsel acknowledged that stipulated damages below the jurisdictional threshold would result in a remand. Counsel tacitly consented to jurisdiction in this Court if STI would agree to a $75,000 "*floor* on damages (per plaintiff) . . . [which] would have to be irreversible, no matter what happened on the case thereafter, unless all the causes of action were dismissed. If we could agree on the wording and terms of such a stipulation, I might be inclined to withdraw my remand motion (pending on August 3rd) if you were to do that." Dubler Decl., Ex. F (emphasis added).

9

that this case will result in a damages award "in the hundreds of thousands of dollars," not including possible attorney's fees. Dubler Decl., Ex. B.

The Court must also consider the plaintiffs' demand for punitive damages when calculating the amount in controversy, and can aggregate these damages with the requested compensatory damages. *See Golden v. Golden*, 382 F.3d 348, 355-56 (3d Cir. 2004). Under New Jersey law, plaintiffs are potentially eligible to collect punitive damages, should they prove their case. *See* N.J.S.A. § 2A:15-5.14(b). This conceivable multiplier increases the likelihood that the amount-in-controversy threshold has been satisfied.

Finally, although § 1332 generally excludes "interests and costs" from the amount-in-controversy calculation, attorney's fees are a "necessary part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action [asserted]." *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997) (citing *Missouri State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933)). Considering the plaintiffs' asserted causes of action, both NJLAD and CEPA provide successful plaintiffs with the opportunity to collect "reasonable attorney's fees." N.J.S.A. §§ 10:5-27.1, 34:19-5. Consistent with this fact, plaintiffs' counsel has indicated that there is a likelihood that STI may be "ordered to pay legal fees" after a successful verdict, in addition to the "possible punitives" mentioned above. Dubler Decl., Ex. B.

The foregoing easily meets the *Red Cab/Samuel-Bassett* analysis. The Court holds that complete diversity exists and that it does not appear to a legal certainty that plaintiffs cannot recover the requisite jurisdictional amount.

## III.

For the reasons stated, plaintiffs' motion to remand is denied. An appropriate order will issue.

/s/  Katharine S. Hayden

Hon. Katharine S. Hayden
United States District Judge

Date:  August 7, 2009